IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**P.S. PRODUCTS, INC. and**                                                            **PLAINTIFFS**
**BILLY PENNINGTON, Individually**

**V.**                           **Case No. 4:13-cv-342-KGB**

**ACTIVISION BLIZZARD, INC.,**                                      **DEFENDANTS**
**ACTIVISION PUBLISHING, INC., and**
**TREYARCH CORPORATION**

**DEFENDANTS' BRIEF IN SUPPORT OF
<u>MOTION TO DISMISS UNDER RULE 12(B)(6)</u>**

**I.   INTRODUCTION**

Plaintiffs P.S. Products, Inc. and Billy Pennington's (collectively, "P.S. Products" or "Plaintiffs") First Amended Complaint ("FAC") is a misguided attempt to expand the scope of a design patent beyond its intended bounds.  Plaintiffs are manufacturers of stun guns and other personal security devices.  Plaintiffs assert infringement of U.S. Design Patent No. D561,294 ("the '294 Patent) against Activision Blizzard, Inc., Activision Publishing, Inc. and Treyarch Corporation (collectively "Activision" or "Defendants"), makers and publishers of videogames. The '294 Patent claims an ornamental design for a stun gun.  Yet P.S. Products nowhere alleges that Activision makes, uses, or sells actual stun guns bearing the patented design.  Instead, P.S. Products alleges infringement solely based on *images* of an entirely different-looking and fictional stun gun depicted in Activision's videogame *Call of Duty, Black Ops II*.

On these facts, Plaintiffs simply cannot meet the test for design patent infringement, as Plaintiffs' design patent on the ornamental aspects of a real world stun gun cannot, as a matter of law, extend to cover images of a virtual stun gun in a videogame.  To prevail on a design patent infringement claim, a plaintiff must prove that an ordinary observer would be deceived into buying the accused product (a videogame) thinking that it was the same as the patented invention (a stun gun).  Plaintiffs in this case cannot meet this burden.  No ordinary observer would ever be

deceived into buying the accused videogame thinking that it is the patented stun gun. Design patents simply cannot be extended to cover such disparate articles of manufacture. The Court should therefore dismiss Plaintiffs' design infringement claim, as have other district courts addressing this same issue.[1]

Plaintiffs' FAC also includes claims for unfair competition and deceptive trade practices. But the entire factual allegations supporting these claims rest on the alleged infringement of Plaintiffs' '294 Patent. Plaintiffs' FAC does not provide any factual allegations to support an unfair competition claim or deceptive trade practices claim beyond Activision's alleged infringement of the '294 Patent. Therefore, because Plaintiffs cannot sustain a claim against Activision for infringement of Plaintiffs' design patent, Plaintiffs' claims for unfair competition and deceptive trade practices must also be dismissed.

Plaintiffs have also asserted a claim for common law trademark infringement with respect to the stun gun design described in the '294 Patent. In order for Plaintiffs to state a claim for trademark infringement of a product design (or, in other words, trade dress infringement), they must allege, in part, that the alleged trade dress is: (1) distinctive and (2) nonfunctional. Plaintiffs have failed to allege any facts to suggest that Plaintiffs' product design is distinctive or nonfunctional. Accordingly, Plaintiffs' common law trademark infringement claim should also be dismissed as a matter of law.

## II. FACTUAL BACKGROUND ALLEGED IN COMPLAINT

As set forth in its Complaint, Plaintiffs are "manufacturers of stun guns and other personal security devices." (FAC at ¶¶ 5.) Plaintiffs own the '294 Patent, which is entitled "Stun Gun." (*Id.* at ¶¶ 11-12; Ex. A at 1.) The '294 Patent claims an "ornamental design for a

---

[1] *Kellman v. Coca-Cola Co.*, 280 F. Supp. 2d 670 (E.D. Mich. 2003) (dismissing claim for infringement of design patent on novelty hat against bottle cap and t-shirt having an image of patented hat); *Vigil v. Walt Disney Co.*, 1998 U.S. Dist. LEXIS 22853 (N.D. Cal. December 1, 1998), *aff'd* 2000 U.S. App. LEXIS 6231 (Fed. Cir. Apr. 5, 2000) (dismissing claim for infringement of design patent on duck call in the shape of a hockey stick against a key chain in the shape of a hockey stick).

stun gun." (Complaint at ¶ 11; Ex. A at 1). According to Plaintiffs, the *Zap Blast Knuckle*, a stun gun manufactured by P.S. Products, embodies the patented design of the '294 Patent. (Complaint at ¶ 16.)

Activision, on the other hand, is a developer and publisher of videogames, including the videogame *Call of Duty, Black Ops II*. (*Id.* at ¶ 25-28.) Activision does not make, use or sell any actual stun guns or other personal security devices, and Plaintiffs do not allege that Activision does so. Rather, Plaintiffs allege that Activision has "committed acts of infringement in violation of 35 U.S.C. §271 by offering for sale and providing to customers in the state of Arkansas the video game *Call of Duty, Black Ops II*, which contains illegal images of the Plaintiffs' United States Letters Patent No. US D561, 294 S." (*Id.* at ¶¶ 3, 24, 35.) Plaintiffs further allege that "[i]n the video game *Call of Duty, Black Ops II* on and in all platforms a player, via an avatar, may access weapons called the *Combat Suppression Knuckles* or *Galvaknuckles* via icons that are illegal images that embody the Plaintiffs' US D561, 294 S patent." (*Id.* at ¶ 36.) Accordingly, the accused product is the *Call of Duty, Black Ops II* videogame including a graphical depiction of a fictional stun gun among the thousands of graphical depictions within the videogame. The fictionalized stun gun in the accused videogame is available as a weapon option within certain game play levels. (*Id.* at ¶¶39-43)

On the left below is Figure 6 of the '294 Patent, which depicts Plaintiffs' patented stun gun design; on the right below is a screen shot of the graphical stun gun in the accused videogame identified in the Complaint:


Figure 6 of '294 Patent


Sample Image in Accused Videogame

Plaintiff does not allege any other acts of patent infringement by Activision other than the inclusion of images of certain fictional stun guns in various parts of *Call of Duty, Black Ops II*.[2] The alleged infringement of the '294 Patent is also the basis for Plaintiffs' unfair competition and deceptive trade practices claims.  (FAC at ¶¶ 65, 75.)

In support of their trademark infringement claim, Plaintiffs allege that they are "the rightful and legal owners of a common law trademark of their unique design."  (*Id.* at ¶87.) Nowhere do Plaintiffs explain or define the "unique design" alleged in Count IV that is allegedly the subject of Plaintiffs' common law trademark other than the reference to the '294 Patent. Plaintiffs further allege that "Defendants have infringed and continue to infringe on the common law trademark by its manufacture, use, sale, importation, licensing and/or offer for sale of its Defendants' video game *Call of Duty, Black Ops II* for platforms, Xbox, Wii, MICROSOFT WINDOWS and Playstation 3, that contain illegal images that embody the Plaintiffs' common law trademark."  (*Id.* at ¶88.)  In addition, Plaintiffs allege that "Defendants['] acts are likely to cause confusion, mistake or deception among purchasers and potential purchasers of the video games bearing the illegal copies of Plaintiffs' design."  (*Id.* at ¶89.)

## III.  LEGAL ARGUMENT

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)

---

[2] To provide context for the allegations in Plaintiffs' Complaint, attached hereto as Exhibit A is a copy of the '294 Patent; attached hereto as Exhibit B are photocopies of the packaging for the accused video games; attached hereto as Exhibit C are images of the "Combat Suppression Knuckles or Galvaknuckes" from *Call of Duty, Black Ops II* identified in Plaintiffs' Complaint. If requested by the Court, Activision will provide a copy of the accused *Call of Duty, Black Ops II* videogame.  Inclusion of these materials is appropriate on a motion to dismiss under Rule 12(b)(6), as they are expressly identified and referenced in the Complaint.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007); *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008); *Enervations, Inc. v. Minnesota Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *J.K.P. Foods, Inc. v. McDonald's Corp.*, 420 F. Supp. 2d 966, 969 (E.D. Ark. 2006).

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  The complaint must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  In order to give a defendant "fair notice of what the ... claim is and grounds upon which it rests," a plaintiff must plead each claim with sufficient specificity.  *Twombly*, 550 U.S. at 555 (internal quotations omitted).  While a court will generally accept as true all well-pled factual allegations, it need not accept as true legal conclusions "couched as a factual allegation." *Iqbal*, 556 U.S. at 664 (citing *Twombly*, 550 U.S. at 555). Factual allegations also must be plausible on their face and more than merely speculative. *Twombly*, 550 U.S. at 556-57.

     A.     <u>**Count I for Design Patent Infringement Should Be Dismissed**</u>

A patent infringement determination involves two steps: the first step is to construe the claim, and the second step is to compare it to the design of the accused product.  *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670, 678-81 (Fed. Cir. 2008).  In the infringement step, a plaintiff must prove that an ordinary observer, conversant with the prior art, would be deceived into buying the accused product thinking that it was the same design as the patented design.  *Id.* at 670-71 (citing *Gorham Co. v. White*, 81 U.S. 511, 528 (1872)).  Where no ordinary observer could determine that the patented design and the accused product are substantially the same, dismissal is appropriate under Rule 12(b)(6).  *See, e.g., Kellman v. Coca-Cola Co.*, 280 F. Supp. 2d 670, 678-680 (E.D. Mich. 2003); *Vigil v. Walt Disney Co.*, 1998 U.S. Dist. LEXIS 22853 (N.D. Cal. Dec. 1, 1998); *MSA Products, Inc. v. Nifty Home Products, Inc.*, 883 F. Supp. 2d 535, 540-42 (D.N.J. 2012); *Colida v. Nokia, Inc.*, 347 Fed. App'x. 568, 569–70 (Fed. Cir. 2009); *Parker v. Kimberly–Clark Corp.*, No. 11 C 5658, 2012 WL 74855, at *2–3 (N.D. Ill. Jan. 10, 2012); *Cotapaxi Custom Design and Mfg., LLC v. Corporate Edge, Inc.*, 2007 U.S. Dist. LEXIS 73172, at *11-12 (D.N.J. Oct. 1, 2007).

The accused product here is a videogame, whereas the '294 Patent is directed to an ornamental design for a stun gun.  The two articles of manufacture are so disparate that, as a matter of law, P.S. Products cannot meet the standard for infringement of a design patent.  P.S.

Products' Complaint should be dismissed because no ordinary observer would ever be deceived into buying the accused *Call of Duty, Black Ops II* videogame thinking that it was the patented stun gun.

### 1. The '294 Patent is directed to an ornamental design for a stun gun.

The first step in determining infringement is construing the asserted claims. *Egyptian Goddess, Inc.*, 543 F.3d at 679 (Fed. Cir. 2009). In the case of design patents, the court need not conduct elaborate claim construction because the claims are often best represented by patent drawings. *See id.*; *see also Cotapaxi*, 2007 U.S. Dist. LEXIS 73172, at *9-10. A design patent only protects the novel, ornamental features of the patented design. *See OddzOn Produs., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). The scope of the patent should be limited to its "overall ornamental visual impression, rather than to the broader general design concept." *See OddzOn Prds.*, 122 F.3d at 1405; *see also Contessa Food Prods*, 282 F.3d at 1377. Moreover, the scope of a design patent's protection is narrow; the claim is limited to what is shown in the application drawings. *Metrokane, Inc. v. Wine Enthusiast*, 185 F.Supp.2d 321, 326 (S.D.N.Y. 2002).

As P.S. Products concedes, the '294 Patent is directed to "a design invention *for a stun gun*." (FAC at ¶ 11, emphasis added.) The '294 Patent's sole claim confirms that the patent claims an "ornamental design for a stun gun, as shown and described." (Ex. A at 1.) The claim is followed by six figures of the stun gun design, which, as P.S. Products asserts, is in the shape of brass knuckles. (FAC at ¶ 18.) The drawings show that the stun gun design adopts features of a particular design of brass knuckles: an elongated base and a knuckle piece connected to the elongated base to form four holes, with the knuckle piece comprising four curved surfaces along the top of the stun gun corresponding to each hole. Accordingly, the '294 Patent claims a stun gun in the shape of brass knuckles substantially as shown in the below figure:



## 2. No ordinary observer would be deceived into purchasing the accused products thinking it to be the '294 Patent claimed design.

After construing the scope of the design patent, the "ordinary observer" test must be met in order to find that an accused product infringes a design patent. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). To prevail under this test, P.S. Products must be able to prove that an ordinary observer, conversant with the prior art, would be deceived into buying the accused product thinking that it was the same product as the patented design. The Supreme Court so held in *Gorham Co. v. White*, 81 U.S. 511, 528 (1872):

> We hold, therefore, that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are **substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other**, the first one patented is infringed by the other.

*Id.* at 528 (emphasis added); *Egyptian Goddess, Inc.*, 543 F.3d at 681 (reiterating that *Gorham* is the sole test for infringement). It is the overall appearance of the design as a whole that is controlling in determining infringement. *See OddzOn Prods.*, 122 F.3d at 1405. Infringement cannot be based on the similarity of specific features if the overall appearances of the designs are dissimilar. *Id.*

Here, the two designs are so different that no ordinary observer would purchase one supposing it to be the other. Indeed, the differences between the products here—a videogame and a stun gun—are so pronounced that the test for infringement cannot possibly be met.

*Kellman v. Coca-Cola Co.*, 280 F. Supp. 2d 670 (E.D. Mich. 2003) is instructive. In *Kellman*, the Court dismissed Plaintiff's design patent claim on a 12(b)(6) motion, because the articles of manufacture between the design patent and the accused products were so different that the ordinary observer test could not be met as a matter of law. The design patent at issue in *Kellman* claimed a novelty hat in the shape of a "wing nut." *Id.* at 671-72. The defendants used images of the patented hat on bottle caps and t-shirts, which plaintiffs claimed was an infringement of their design patent. *Id*. at 673. The *Kellman* Court granted defendants' motion to dismiss plaintiffs' design patent claim finding that no reasonable person would confuse the entirely different articles of manufacture (i.e., a hat versus a bottle cap or t-shirt):

> The fundamental question we have to decide . . . is whether a design patent can be infringed when the articles of manufacture are so entirely different (i.e. a novelty hat versus a t-shirt or bottlecap) that no reasonable person would purchase the t-shirt or bottlecap thinking that he or she was purchasing the novelty hat. After analysis, **we do not find that the design of the hat as compared to the t-shirts and bottlecaps to be substantially similar to cause confusion**.

*Id.* at 680 (emphasis added).

*Vigil v. Walt Disney Co.*, 1998 U.S. Dist. LEXIS 22853 (N.D. Cal. December 1, 1998), *aff'd* 2000 U.S. App. LEXIS 6231 (Fed. Cir. Apr. 5, 2000) reached the same conclusion. There, as in *Kellman*, the court granted a motion to dismiss plaintiff's design patent claim where the patent-at-issue was directed to an article of manufacture entirely different from the accused product:

> Plaintiff's hockey stick duck call is also not substantially the same as Disney's hockey stick key chain. Significantly, **plaintiff's duck call is not even an analogous article of manufacture when compared with Disney's key chain**. The similarity between the two items arises from the fact that both are in the shape of a hockey stick and nothing more. This mere similarity in appearance between plaintiff's hockey stick duck call and Disney's hockey stick key chain is not enough to claim a design patent infringement.

*Id.* at *9-10 (emphasis added).

8

In this case, P.S. Products' claim fails for the same reasons as the claims rejected by the *Kellman* and *Vigil* courts. Just as no ordinary observer could find the designs of the accused products in *Kellman* and *Vigil* to be substantially similar to the patented designs in those cases, no ordinary observer would ever confuse the patented stun-gun design for the accused videogame. Accordingly, P.S. Products cannot meet the "ordinary observer" test to support their claim of design patent infringement.

### B. Counts II and III for Unfair Competition and Deceptive Trade Practices Should Be Dismissed

Counts II and III of the FAC are for Unfair Competition and Deceptive Trade Practices. As alleged in the FAC, the only wrongful acts committed by Activision that resulted in unfair competition or a violation of Arkansas Deceptive Trade Practices Act is the alleged infringement of the '294 Patent. Specifically, the FAC alleges that "Defendants offer for sale a video game *Call of Duty, Black Ops II*… that contain illegal images that embody the Plaintiffs' US D561, 294 S patent." (FAC at ¶65.) The FAC then alleges that these "acts" of infringement of the '294 Patent resulted in violations of unfair completion law and the Deceptive Trade Practices Act. (FAC at ¶¶66-67; 76-77.)

As explained above, Plaintiffs' claim for infringement of the '294 Patent should be dismissed, because Plaintiffs cannot, as a matter of law, establish infringement under the ordinary observer test. Because the entirety of the alleged acts committed by Activision that provide the basis for Plaintiffs' Counts II and III for Unfair Competition and Deceptive Trade Practices is Activision's alleged infringement of the '294 Patent, Counts II and III should be dismissed together with Count I for patent infringement.

Moreover, to the extent Plaintiffs contend that their unfair competition and deceptive trade practices claims are predicated on Activision's use of aspects of Plaintiffs' stun gun design not protected by the '294 patent, such claims are preempted by federal patent laws. *Bonito Boats Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989). In *Bonito Boats*, the Supreme Court held

that a state unfair competition law protecting boat hull designs was preempted by the federal patent laws. *Id.* at 167. The Supreme Court reasoned that the "Florida [unfair competition] law substantially restricts the public's ability to exploit an unpatented design in general circulation, raising the specter of state-created monopolies in a host of useful shapes and processes for which patent protection has been denied or is otherwise unobtainable. It thus enters a field of regulation which the patent laws have reserved to Congress. The patent statute's careful balance between public right and private monopoly to promote certain creative activity is a scheme of federal regulation so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Id.* at 167 (internal citations and quotation marks omitted).

Here, Plaintiffs' claims for unfair competition and deceptive trade practices appear to be based entirely on Activision's alleged infringement of the '294 Patent, and therefore should be dismissed for the same reasons as Plaintiffs' design patent claims. But to the extent Plaintiffs claim that their unfair competition claims and deceptive trade practices claims are based on some other, unpatented, aspect of Plaintiffs' stun gun design, such claims should be dismissed as being preempted by federal patent law.

        **C.**     **<u>Count IV for Common Law Trademark Infringement Should be Dismissed</u>**

In Count IV for Common Law Trademark Infringement, Plaintiffs allege that they are "the rightful and legal owners of a common law trademark of their unique design." (FAC at ¶87.) The only design referenced in Count IV of the FAC is that of the '294 Patent. Elsewhere in the FAC, Plaintiffs allege that "Plaintiffs' product, the *Zap Blast Knuckle*® embodies the US D561, 294 S design patent." Presumably, the alleged "unique design" for which Plaintiffs are alleging common law trademark rights is the product design for the Zap Blast Knuckle. Accordingly, Plaintiffs' trademark claim appears to be one for trade dress. *See Rotoworks International Ltd. v. Grassworks USA, LLC*, 504 F.Supp.2d 453, 460 (W.D. Ark. 2007) (defining trade dress as "the total image of a product, the overall impression created, not the individual features").

Plaintiffs do not allege that they own a registered trademark to any product design. While there are no reported Arkansas opinions on common law trade dress claims, the standard for unregistered trade dress claims brought under the Lanham Act and the elements for trade dress infringement outlined in the Restatement of Unfair Competition should control here. *See Tri-County Funeral Service, Inc. v. Eddie Howard Funeral Homes, Inc.*, 330 Ark. 789, 797, 957 S.W.2d 694, 697 (1997) (adopting section 18 of the Restatement of Unfair Competition); *Airwair Int'l Ltd. v. Vans, Inc.*, Case No.: 5:12-CV-05060-EJD, 2013 U.S. Dist. LEXIS 100120 at *23 (N.D. Cal. July 17, 2013).

"A plaintiff asserting a claim for infringement of trade dress must plead…three basic elements: (1) plaintiff owns a protectable trade dress in a clearly articulated design or combination of elements that is either inherently distinctive or has acquired distinctiveness through secondary meaning, (2) the accused mark or trade dress creates a likelihood of confusion as to source, or as to sponsorship, affiliation or connection, (3)…that the trade dress is not functional." J. Thomas McCarthy, *McCarthy on Trademarks* §8:1 at 8-3 (2013); *Gateway, Inc. v. Companion Products, Inc.*, 384 F.3d 503, 507 (8th Cir. 2004) (identifying the elements of trade dress infringement as: (1) distinctiveness, (2) nonfunctionality, and (3) likelihood of confusion); Restatement of the Law (Third) of Unfair Competition, § 16 (1995) (stating that "the design of a product … is eligible for protection as a mark … if (a) the design is distinctive …; and (b) the design is not functional….").

Plaintiffs must also allege with specificity the aspects of the product design that it contends define the trade dress. "Whatever may be claimed as the combination of elements making up the product or its packaging and presentation, in the author's opinion, it will not do to solely identify in litigation such a combination as 'the trade dress.' Rather, the discrete elements which make up that combination should be separated out and identified in a list." J. Thomas McCarthy, *McCarthy on Trademarks* §8:3 at 8-11 (2013) (citing *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997) (Without "a precise explanation of the character and scope of the claimed trade dress, litigation will be difficult…"); *Abercrombie &*

11

*Fitch Stores, Inc. v. American Eagle Outfitters, Inc.* 280 F.3d 619, 635 (6th Cir. 2002) (A plaintiff is "expected to list the elements of the designs and the unique combinations it [seeks] to protect…"); *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F.Supp.2d 273, 299 (S.D.N.Y. 2002) (plaintiff "failed to articulate the specific common elements of its…trade dress for which it seeks protection"); *Sleep Science Partners v. Lieberman*, 2010 WL 1881770 (N.D. Cal. 2010) (Dismissing a claim of infringement of a website's "look and feel." "Without an adequate definition of the elements comprising the website's 'look and feel' [defendant] is not given adequate notice."); *Glassybaby, LLC v. Provide Gifts, Inc.*, 100 U.S.P.Q.2d 1547, 2011 WL 2218583 (W.D. Wash. 2011 (Dismissing with leave to amend allegations of infringement of trade dress in votive candle holders that failed to define the elements of the trade dress)).

Here, Plaintiffs have failed to (1) define their alleged trade dress, (2) allege facts that suggest that the alleged trade dress has acquired distinctiveness through secondary meaning, and (3) allege facts that suggest that the alleged trade dress is not functional. Accordingly, Plaintiffs have failed to state a claim for common law trademark infringement of a product design or trade dress infringement. Count IV should therefore be dismissed.

## IV. CONCLUSION

Because Defendants' accused products are entirely different articles of manufacture than those claimed by Plaintiffs' design patent, Plaintiffs cannot, as matter of law, satisfy the "ordinary observer" test necessary to establish infringement of their design patent. Plaintiffs' claim for design patent infringement should therefore be dismissed without leave to amend.

Plaintiffs' claims for unfair competition and deceptive trade practices, as alleged in the FAC, are predicated entirely on Plaintiffs' claim for design patent infringement. Because the design patent infringement claim should be dismissed with prejudice, so should Plaintiffs' unfair competition and deceptive trade practices claims.

Finally, Plaintiffs have failed to allege facts to support the basic elements required to sustain a claim for common law trademark infringement of a product design. Accordingly, Plaintiffs' Count IV for common law trademark infringement should also be dismissed.

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
Fax: (501) 376-9442
E-mail:   bglasgow@wlj.com


By /s/ Richard Blakely Glasgow
   Richard Blakely Glasgow (2009157)

   *Attorneys for Activision Blizzard, Inc., Activision Publishing, Inc., and Treyarch Corporation*

**CERTIFICATE OF SERVICE**

      On October 23, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which served a copy on the following through notice of electronic filing:

STEWART LAW FIRM
Chris H. Stewart
904 Garland Street
Little Rock, AR 72201
(501) 353-1364
arklaw@comcast.net

*Attorneys for P.S. Products, Inc. and Billy Pennington*

                                      /s/ Richard Blakely Glasgow