**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**P.S. PRODUCTS, INC. and
BILLY PENNINGTON, Individually**                                                              **PLAINTIFFS**

v.                              Case No. 4:13-cv-00342-KGB

**ACTIVISION BLIZZARD, INC.,
ACTIVISION PUBLISHING, INC., and
TREYARCH CORPORATION**                                                                 **DEFENDANTS**

**OPINION AND ORDER**

Plaintiffs P.S. Products, Inc. ("P.S. Products") and Billy Pennington bring this action against defendants Activision Blizzard, Inc., Activision Publishing, Inc., and Treyarch Corporation and allege claims of patent infringement; unfair competition; violation of the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. § 4-88-107; and common law trademark infringement.  Before the Court is defendants' motion to dismiss plaintiffs' first amended complaint under Rule 12 (b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 24). Plaintiffs have responded (Dkt. No. 27), and defendants have replied (Dkt. No. 30).  For the reasons that follow, defendants' motion to dismiss is granted.

**I.     Background**

Plaintiffs P.S. Products and Mr. Pennington, the president of P.S. Products, allege in their amended complaint that they are manufacturers of stun guns and other personal security devices. They allege they own United States Design Patent No. D561, 294 S and its continuation patent, D576, 246 S (collectively, "the '294 patent").  Plaintiffs state that the '294 patent was issued for a design invention for a stun gun.  Plaintiffs claim that their products are one a kind; their designs are their own intellectual property; no goods of this design existed prior to plaintiffs'

designs and patents; and plaintiffs are the only holders of patents on products of this kind in the United States (Dkt. No. 20, ¶¶ 11, 13-15).

Plaintiffs allege that their product, the *Zap Blast Knuckle*®,[1] is the embodiment of the '294 patent, which claims "[t]he ornamental design for a stun gun."  Plaintiffs, in their amended complaint, contend that a user holds the *Zap Blast Knuckle*® as if holding a pair of brass knuckles, and the *Zap Blast Knuckle*® produces a 950,000 volt electrical shock when operated by a user.  Plaintiffs maintain that the *Zap Blast Knuckle*® is one of plaintiffs' most sought after and sold products.  Plaintiffs further allege that they have complied with the statutory requirement of placing a notice of the Letters of Patent on all Stun Guns; there is no prior art to this design; plaintiffs have used the design exclusively since February 5, 2008; and plaintiffs have what constitutes a common law trademark (Dkt. No. 20, ¶¶ 16-23).

Defendants are makers and publishers of video games, including the video game *Call of Duty, Black Ops II*, which is allegedly sold for multiple gaming platforms.  According to plaintiffs' complaint, the sale of *Call of Duty, Black Ops II* has generated over $1 billion in revenue to date, and the game was the highest grossing video game sold in 2012 (Dkt. No. 20, ¶32-33).  Plaintiffs allege that defendants' video game *Call of Duty, Black Ops II* contains "illegal images" that embody the '294 patent.  Plaintiffs state, in their amended complaint, that in *Call of Duty, Black Ops II*, a player, through an avatar, may access weapons called the "Combat Suppression Knuckles" or "Galvaknuckles" by icons that are illegal images that embody the '294 patent.  Plaintiffs further allege that the "Combat Suppression Knuckles" or "Galvaknuckles"

---

[1] Plaintiffs in their amended complaint use the term "*Zap Blast Knuckle*®" as if the term is a registered trademark but do not give a trademark registration number and do not allege infringement of a registered trademark.  Both parties use the term in their briefing.  The Court uses this term with the "®" symbol only to the extent the parties use it in their briefing.  The Court does not indicate a finding or acknowledgement that this phrase is a registered trademark.

which a player may access through the icons are an illegal copy of the '294 patent (Dkt. No. 20, ¶¶ 35-37). Plaintiffs maintain that, in the video game, when a player through an avatar uses the weapons called "Combat Suppression Knuckles" or "Galvaknuckles," the weapon emits an electrical shock representing in reality the shock volts produced by the plaintiffs' product *Zap Blast Knuckle*® that embodies the '294 patent (Dkt. No. 20, ¶ 38).

Plaintiffs allege that defendants "committed acts of infringement in violation of 35 U.S.C. § 271 by offering for sale and providing to customers in the state of Arkansas the video game *Call of Duty, Black Ops II,* which contains illegal images of the plaintiffs' United States Letters Patent No. US D561, 294 S." (Dkt. No. 20, ¶¶ 3, 24, 35). Count I of the amended complaint asserts patent infringement and alleges that defendants have infringed and continue to infringe on the '294 patent through the manufacture, use, sale, importation, licensing, and/or offer for sale of *Call of Duty, Black Ops II* that contains illegal images that embody the '294 patent (*Id*., ¶ 58). Plaintiffs allege defendants also have infringed and continue to infringe the '294 patent by contributing to and actively inducing others to use, sell, import, and/or offer for sale its video game *Call of Duty, Black Ops II* that contains illegal images that embody the '294 patent. Plaintiffs claim that defendants are liable for this infringement of the '294 patent pursuant to 35 U.S.C. § 271 (*Id*.).

Count II of the amended complaint asserts unfair competition and Count III asserts deceptive trade practices. Plaintiffs, in both of these counts, allege that defendants offered for sale a video game that contains "illegal images that embody" the '294 patent and that defendants' acts "are likely to cause confusion, mistake, or deception among purchasers of the video games bearing the illegal copies of the Plaintiffs' design" because "[p]urchasers and potential purchasers are likely to believe that illegal images in the Defendants' video game

originate from, or are in some way properly connected with, approved, sponsored and endorsed by the Plaintiffs" (Dkt. No. 20, ¶¶ 65-66, 75-76). Plaintiffs also allege in Count II that the "confusion, mistake or deception referred to herein arises out the aforesaid acts of the Defendants which constitute misappropriation and unauthorized use of the Plaintiffs' design or intangible asset" (*Id*., ¶ 67). Plaintiffs assert in Count III that the "confusion, mistake or deception referred to herein arises out the aforesaid acts of the Defendants which constitute misappropriation and unauthorized use of the Plaintiffs' design or intangible asset are in violation of [the ADPTA, Ark. Code Ann. § 4-88-107]" (*Id*., ¶ 77).

Count IV of the amended complaint asserts common law trademark infringement. Plaintiffs in this count contend that plaintiffs' design "is one of a kind and no prior existed"; that plaintiffs have exclusively used the design since February 5, 2008; that plaintiffs "are the rightful and legal owners of a common law trademark of their unique design"; and that defendants "have infringed and continue[] to infringe on the common law trademark by [their] manufacture, use, sale, importation, licensing and/or offer for sale of" the video game that contains "illegal images that embody the Plaintiffs' common law trademark" (Dkt. No. 20, ¶¶ 85-88). In Count IV of the amended complaint, plaintiffs repeat the allegations from Counts II and III that defendants' acts "are likely to cause confusion, mistake, or deception among purchasers of the video games bearing the illegal copies of the Plaintiffs' design" because "[p]urchasers and potential purchasers are likely to believe that illegal images in the Defendants' video game originate from, or are in some way properly connected with, approved, sponsored and endorsed by the Plaintiffs" and that such acts constitute common law trademark infringement (*Id*., ¶¶ 89-90).

Defendants move to dismiss each of plaintiffs' claims for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. Legal Standard

The Court first addresses whether defendants' motion is properly treated as a motion to dismiss under Rule 12(b)(6). To "provide context" for plaintiffs' allegations, defendants attached to their motion a copy of the '294 patent; photocopies of the packaging for the allegedly infringing video game; and images of the "Combat Suppression Knuckles or Galvaknuckles" from the allegedly infringing video game as identified in plaintiffs' complaint (Dkt. Nos. 24-1 to 24-4). Defendants suggest that identification of these materials is appropriate for a Rule 12(b)(6) motion to dismiss because they are expressly identified and referenced in plaintiffs' complaint.

Rule 12(d) requires that the Court treat a motion to dismiss under Rule 12(b)(6) as a motion for summary judgment under Rule 56 if "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). However, "documents necessarily embraced by the complaint are not matters outside the pleading." *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (quotations omitted). "Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1150-51 (8th Cir. 2012) (quoting *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003)). The Court determines that the content of the documents attached to defendants' motion was alleged in plaintiffs' amended complaint, no party questions the authenticity of these documents, and, therefore, the documents are necessarily embraced by the pleadings. Accordingly, the Court will not treat defendants' motion as a motion for summary judgment but will instead consider it a motion to dismiss.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must satisfy the pleading requirement of Rule 8(c)(2), which necessitates that a complaint present "a short and plain statement of the claim that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). Specific facts are not required; the complaint must simply "'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden*, 588 F.3d at 594 (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard is not a probability requirement. Thus, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Id*. (internal quotations omitted).

In *Twombly*, the Supreme Court abrogated the former "no set of facts" standard announced in *Conely v. Gibson*, 355 U.S. 41, 45-46 (1957). In *Conley*, the Supreme Court determined that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." *Id*. The Court reaffirmed *Twombly*'s abrogation of *Conley* in *Iqbal*. 556 U.S. at 678. However, as the Eighth Circuit has recognized, *Twombly* and *Iqbal* "did not abrogate the notice pleading standard of Rule 8(a)(2)." *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010). "Rather, those decisions confirmed that Rule 8(a)(2) is satisfied 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*.; *see also Twombly*, 550 U.S. at 570 ("[W]e do not require heightened fact pleading of specific facts, but only enough facts to state a claim to relief that is plausible on its face. Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

### III. Analysis

#### A. Patent Infringement

Defendants contend that plaintiffs' patent infringement claim fails as a matter of law because no ordinary observer would be deceived into purchasing a video game believing it to be plaintiffs' patented stun gun. A patent-infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed, which is known as claim construction. The second step is comparing the properly construed claims to the device accused of infringing. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) *aff'd*, 517 U.S. 370 (1996). This case involves a design patent. A design patent, unlike a utility patent, limits protection to the ornamental design of the article. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010); *see* 35 U.S.C. § 171(a) ("Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title."); *see also Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988).

The Court need not conduct an elaborate claim construction for design patents because "a design is better represented by an illustration 'than it could be by any description and a description would probably not be intelligible without the illustration.'" *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (quoting *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)); *see also Manual of Patent Examining Procedure* § 1503.01 (8th ed. 2006) ("[A]s a rule the illustration in the drawing views is its own best description."). "Given the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Egyptian Goddess*, 543 F.3d at 679. The Court is not obligated to issue a detailed verbal description of the design if it does not regard verbal elaboration as necessary or helpful. *Id*. The '294 patent is directed to "a design invention for a stun gun." The '294 patents' sole claim is for "[t]he ornamental design for a stun gun, as shown and described." For purposes of this motion only, the Court construes the '294 patent's claim as the ornamental design for a stun gun as shown and described in figures 1-8 of the '294 patent.

At the second step of the infringement analysis, the Court compares the properly construed claims to the device accused of infringing. *Markman*, 52 F.3d at 976. The proper standard for determining design patent infringement is the "ordinary observer test" articulated by the Supreme Court in *Gorham Co. v. White*, 81 U.S. 511 (1871). *See Egyptian Goddess*, 543 F.3d at 678 ("[I]n accordance with *Gorham* and subsequent decisions, we hold that the 'ordinary observer' test should be the sole test for determining whether a design patent has been infringed."). The Supreme Court in *Gorham* described the ordinary observer test as follows:

> We hold, therefore, that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

81 U.S. at 528.  Therefore, to show infringement, "[t]he patentee must establish that an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010).  Where no ordinary observer could determine that the allegedly infringed patent and the allegedly infringing article are substantially the same, dismissal is appropriate. *MSA Products, Inc. v. Nifty Home Products, Inc.*, 883 F. Supp. 2d 535, 541 (D.N.J. 2012).

In support of their contention that plaintiffs' patent infringement claim fails because no ordinary observer would be deceived into purchasing a video game believing it to be plaintiffs' patented stun gun, defendants cite two instructive cases, *Kellman v. Coca-Cola Co.*, 280 F. Supp. 2d 670 (E.D. Mich. 2003), and *Vigil v. Walt Disney Co.*, 1998 U.S. Dist. LEXIS 22853 (N.D. Cal. Dec. 1, 1998), *aff'd* 2000 U.S. App. LEXIS 6231 (Fed. Cir. April 5, 2000).  In *Kellman*, plaintiffs held a design patent for a novelty foam hat in the shape of a wing nut, which plaintiffs stated was intended to demonstrate that they were "nuts" about the Detroit Red Wings.  Plaintiffs alleged patent infringement for t-shirts and bottlecaps containing images of what appeared to be a picture of plaintiffs' patented novelty hat.  280 F. Supp. 2d at 673.  The court found that plaintiffs failed the ordinary observer test, stating that the "fundamental question" before the court was "whether a design patent can be infringed when the articles of manufacture are so entirely different (*i.e.* a novelty hat versus a t-shirt or bottlecap) that no reasonable person would purchase the t-shirt or bottlecap thinking that he or she was purchasing the novelty hat." *Id*. at 679-80.  The court concluded the design of the hat as compared to the t-shirts and bottlecaps was not substantially similar as to cause confusion. *Id*. at 680.  The Court also rejected plaintiffs' claim that their design patent "protects the visual pun that the novelty hat represents," noting that "[p]laintiffs cite no case law which holds that an intangible, visual pun can be protected by a

9

design patent which is supposed to protect the non-functional, ornamental features of a tangible item." *Id*.

The *Kellman* court relied in part on the *Vigil* court's reasoning.  In *Vigil*, the court found that a patented design for a hockey stick duck call was not substantially similar to defendant's hockey stick key chain because the patented item and the accused item were not even "analogous article[s] of manufacture . . . ." *Vigil*, 1998 U.S. Dist. LEXIS 22853, at *9.  The court noted that the sole similarity between the two items "arises from the fact that both are in the shape of a hockey stick and nothing more.  This mere similarity in appearance between plaintiff's hockey stick duck call and Disney's hockey stick key chain is not enough to claim a design patent infringement." *Id.*

Plaintiffs counter in their response that "[o]ne does not escape infringement by using a patented invention for a purpose not contemplated or disclosed by the patentee" (Dkt. No. 27, at 8).  Plaintiffs' arguments here rely on cases involving utility patents, which do not apply here.  Plaintiffs also raise the argument that they could have obtained a design patent for a computer icon if they had applied for one (*Id*. at 10-11).  Plaintiffs have not alleged infringement of a design patent for a computer icon, and such a hypothetical situation is not before the Court.  Plaintiffs also argue that an ordinary observer "would believe the Defendants['] icon is related to [and] connected and licensed by the Plaintiffs" (*Id*. at 11).  This argument misapplies the ordinary observer test and is more properly associated with plaintiffs' non-patent claims, as discussed below.

The Court finds that plaintiffs' claim for infringement of the '294 patent fails to state a claim upon relief can be granted because plaintiffs' allegations, accepted as true, fail to pass the ordinary observer test.  Plaintiffs' arguments are no more compelling than those rejected by the

courts in *Kellman* and *Vigil*, and this Court agrees with the reasoning of those decisions. No reasonable person would purchase defendants' video game believing that they were purchasing plaintiffs' stun gun. Defendants' motion to dismiss as to Count I of plaintiffs' amended complaint is granted. Count I of plaintiffs' amended complaint for patent infringement is dismissed.

### B. Unfair Competition and Deceptive Trade Practices

Count II for unfair competition and Count III for deceptive trade practices under the ADTPA are based on identical allegations that defendants' video game contains "illegal images" that embody the '294 patent and that such acts are "are likely to cause confusion, mistake, or deception among purchasers of the video games bearing the illegal copies of the Plaintiffs' design" because "[p]urchasers and potential purchasers are likely to believe that illegal images in the Defendants' video game originate from, or are in some way properly connected with, approved, sponsored and endorsed by the Plaintiffs." (Dkt. No. 20, ¶¶ 65-66, 75-76).

Defendants move to dismiss these claims together to the extent they are based on plaintiffs' patent infringement claim. Defendants also argue that unfair competition and deceptive trade practices claims predicated on defendants' use of aspects of plaintiffs' stun gun design not protected by the '294 patent fail, as such claims are preempted by federal patent laws, citing *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989).

Plaintiffs in their response argue they intend to bring claims under the Lanham Act, 15 U.S.C. § 1125, in addition to their claims under the ADTPA, Ark. Code Ann. § 4-88-107. Plaintiffs briefing indicates these claims are duplicative of, and therefore rely on, plaintiffs' claim for trademark infringement, which are discussed below. Defendants object that plaintiffs cannot amend the allegations of their amended complaint through their response to defendants' motion

11

to dismiss (Dkt. No. 30, at 5); *see Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal quotation marks and citation omitted). Defendants also argue that, even if these claims were properly alleged to be predicated on plaintiffs' trademark infringement claim, these claims would fail for the same reasons defendants assert plaintiffs' trademark claim should be dismissed.

The Court agrees. Plaintiffs' claim for trademark infringement fails for the reasons discussed below. Therefore, even if plaintiffs' claims for unfair competition and deceptive trade practices under the ADTPA were properly pleaded as predicated on plaintiffs' trademark claim, these claims also are dismissed for the reasons set forth below.

### C. Common Law Trademark Infringement

Count VI for common law trademark infringement alleges that plaintiffs are "the rightful and legal owners of a common law trademark of their unique design." (Dkt. No. 20, ¶ 87). Because the only design referenced in Count IV is that of the '294 patent, defendants presume in their initial briefing that the "unique design" referenced is the product design of the *Zap Blast Knuckle®* and, therefore, interpret plaintiffs' claim as one for trade dress infringement (Dkt. No. 25, at 10). "Trade dress is the total image of a product, the overall impression created, not the individual features." *Gateway, Inc. v. Companion Products, Inc.*, 384 F.3d 503, 507 (8th Cir. 2004) (quoting *Aromatique, Inc., v. Gold Seal, Inc.*, 28 F.3d 863, 868 (8th Cir. 1994)). Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), creates a federal cause of action for trade dress infringement. *Id*. While "trade dress" traditionally referred to packaging and labelling of a product, the term has now been stretched to include the shape and design of the product itself. 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 8:5 (4th ed.) (West

2013). "Thus, the field of law once referred to as unfair competition by 'product simulation,' has now been folded into that corner of trademark and unfair competition law called 'trade dress.'" *Id*. Plaintiffs in their brief indicate agreement with defendants' determination that plaintiffs' trademark claim is one for trade dress infringement (Dkt. No. 27, at 13).

For plaintiffs to establish a claim for trade dress infringement, they must demonstrate that their claimed trade dress is: (1) inherently distinctive or acquired distinctiveness through secondary meaning; (2) nonfunctional; and (3) its imitation would result in a likelihood of confusion in consumers' minds as to the source of the product. *Gateway*, 384 F.3d at 507; *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). Defendants argue that plaintiffs failed to plead sufficiently their claim for trade dress infringement because plaintiffs failed to define their alleged trade dress, allege facts that suggest that the alleged trade dress has acquired distinctiveness through secondary meaning, and allege facts that suggest that the alleged trade dress is not functional (Dkt. No. 25, at 12).

As an initial matter "[t]o recover for trade-dress infringement under § 43(a) of the Lanham Act, a party must first identify what particular elements or attributes comprise the protectable trade dress." *Tumblebus Inc. v. Cranmer,* 399 F .3d 754, 768 (6th Cir. 2005) (citation omitted). In other words, "it will not do to solely identify in litigation a combination as 'the trade dress.' Rather, the discrete elements which make up that combination should be separated out and identified in a list." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 634 (6th Cir. 2002) (quoting *McCarthy on Trademarks and Unfair Competition* § 8:3 (4th ed. 1998)); *see also Jalin Realty Capital Advisors, LLC v. A Better Wireless, NISP, LLC*, 917 F. Supp. 2d 927, 940 (D. Minn. 2013) (discussing same). Elements of trade dress "must be defined with sufficient particularity." Charles A. McKenney & George F.

Long, III, 1 *Federal Unfair Competition: Lanham Act 43*(a) § 5:1 & n.25.50 (collecting cases); *compare Jalin Realty*, 917 F. Supp. 2d at 940 ("Here, Jalin has not explained what elements make its website distinctive and worthy of protection. It has simply asserted that its website is 'distinctive' and has a 'unique color motif.'"), *and Lube-Tech Liquid Recycling, Inc. v. Lee's Oil Serv., LLC*, CIV. 11-2226 DSD/LIB, 2013 WL 2420448, at *4 (D. Minn. June 3, 2013) ("Here, Lube–Tech identifies no discrete elements that comprise the trade dress, and this alone warrants dismissal."); *with Insty*Bit, Inc. v. Poly-Tech Indus., Inc.*, 95 F.3d 663, 667 n.6 (8th Cir. 1996) (listing specific elements plaintiff claimed as trade dress).

While trade dress may protect the overall look of a product, "focus on the overall look of a product does not permit a plaintiff to dispense with an articulation of the specific elements which comprise its distinct dress." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997). "Without such a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market." *Id.*; *see also* 1 *McCarthy on Trademarks and Unfair Competition* § 8:3 ("The Second Circuit [in *Landscape Forms*] warned that a vague, broad and non-specific definition of trade dress not only makes it impossible for a court to apply the test of distinctiveness, but also raises the danger of overprotection, with resulting anti-competitive injury to competitors . . . ."); *see also Goddard, Inc. v. Henry's Foods, Inc.*, 291 F. Supp. 2d 1021, 1041 (D. Minn. 2003) (quoting *Landscape Forms*, 113 F.3d at 381).

Here, plaintiffs do not articulate any specific elements that constitute the claimed trade dress. At best, plaintiffs' amended complaint and the arguments in plaintiffs' briefing establish that their claim is for the "unique design" of the *Zap Blast Knuckle*® as the embodiment of the '294 patent. This insufficient; plaintiffs must articulate the specific elements supporting a

"unique design" that constitute the claimed trade dress. Their failure to do so is grounds for dismissal.

Plaintiffs also fail to allege distinctiveness, which is an essential element of plaintiffs' trade dress claim. *See* 1 *McCarthy on Trademarks and Unfair Competition* § 8:1 (4th ed.); 1 *Trade Dress Protection* § 6:1 (2d ed.). While plaintiffs in their amended complaint state that their products are one of a kind, this appears directed toward a claim of inherent distinctiveness. However, the Supreme Court has set forth a bright line rule that product design trade dress can never be classified as "inherently distinctive." *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 216 (2000) ("We hold that, in an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning."). Accordingly, in a claim for infringement of product design trade dress, plaintiffs must allege and prove acquired distinctiveness through secondary meaning, which is present where, "in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself." *Wal-Mart*, 529 U.S. at 211 (internal quotation marks omitted). Plaintiffs state in their response to defendants' motion that their design for the *Zap Blast Knuckle*® is unique and that "[s]ince the design's inception in 2007 the mark of the design has obtained global recognition" (Dkt. No. 27, at 17). At this stage, the Court need not decide whether such assertions, if true, could establish secondary meaning because these assertions are not stated in plaintiffs' amended complaint. The Court will not permit plaintiffs to amend their complaint through allegations made only in response to a motion to dismiss. *Morgan Distrib. Co.*, 868 F.2d at 995.

Defendants also contend that plaintiffs have failed to allege facts to suggest that the alleged trade dress is non-functional. Because plaintiffs have failed to articulate sufficiently the claimed trade dress and its composite elements, the Court cannot determine whether the alleged trade dress is non-functional.

Accordingly, the Court grants defendants' motion to dismiss as to plaintiffs' claim for common law trademark infringement, which the parties have clarified to be a claim for trade dress infringement. Plaintiffs' claim for trade dress infringement is dismissed without prejudice.

As stated above, plaintiffs in their briefing indicate that their claims for unfair competition and deceptive trade practices under the ADTPA are duplicative of, and predicated on, a common theory of product simulation, which is in essence the claim for trade dress infringement. *See* 1 *McCarthy on Trademarks and Unfair Competition* § 7:62 (4th ed.) ("For all practical purposes, there should be no difference in the substantive law of product simulation whether one uses the labels 'trademark,' 'trade dress,' or simply 'unfair competition.'"); *id*. § 8:12 n.12 ("While product configuration had been protected for several decades under state law, it was usually under the label of unfair competition by 'product simulation.'"); *Gaston's White River Resort v. Rush*, 701 F. Supp. 1431, 1435 (W.D. Ark. 1988) ("Arkansas law of trademarks, trade names, and unfair competition is in accord with the general law."). Because plaintiffs' claim for trade dress infringement fails, plaintiffs' duplicative claims for unfair competition and deceptive trade practices also fail. The Court grants defendants' motion to dismiss as to plaintiffs' claims for unfair competition and deceptive trade practices under the ADTPA, and those claims are dismissed without prejudice.

\*       \*       \*

For these reasons, defendants' motion to dismiss is granted (Dkt. No. 24). Plaintiffs' amended complaint is dismissed without prejudice.

SO ORDERED this the 21st day of February, 2014.

_____
Kristine G. Baker
United States District Judge